## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| **CHEERS MATE COCONUT POINT, LLC,** *et al.*,<br><br>      *Plaintiffs*,<br><br>**v.**<br><br>**MICHAEL JARED BUSS,** *et al.*,<br><br>      *Defendants*. | **CIVIL ACTION NO.**<br>**5:23-cv-00066-TES** |

## ORDER FOR UNLIQUIDATED DAMAGES

Plaintiffs Cheers Mate Coconut Point, LLC and Purple Square Management Company, LLC move for unliquidated damages against Defendants Michael Jared Buss, Jared E. Buss, and Meagan Buss pursuant to Federal Rule of Civil Procedure 55(b). [Doc. 24]. For the following reasons, the motion is **GRANTED in part** and **DENIED in part**, and Defendants are jointly and severally **ORDERED** to pay Plaintiffs $17,747.72.

### I. BACKGROUND

On February 9, 2023, Plaintiffs filed a Complaint [Doc. 1] against Defendants for contractual indemnification, enforcement of guaranty, contribution, statutory recoupment and subrogation, and attorney's fees and expenses of litigation. On April 24, 2023, the Court granted Plaintiffs a default judgment for $256,000.00. [Doc. 19]. The Court further held that Defendants owed Plaintiffs for Attorney's Fees and Expenses of

Litigation (pursuant to Count V of the Verified Complaint) and pre-judgment interest in an amount to be determined later. [Doc. 19]; [Doc. 1, ¶¶ 50–52].

## II. DISCUSSION

### A.    Legal Standard

In assessing the reasonableness of a request for attorney's fees in the Eleventh Circuit, courts use the "lodestar" method to calculate an objective estimate of the value of an attorney's services. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Under the lodestar method, the value of an attorney's services is calculated by multiplying the hours that the attorney reasonably worked by a reasonable rate of pay. *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman*, 836 F.2d at 1299). The "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Norman*, 836 F.2d at 1303). The district court should exclude "hours that were not reasonably expended," such as work that was "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

Importantly, courts are not authorized "to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." *Barnes*, 168 F.3d at 428. When a request for attorney's fees is unreasonably high, courts may "conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut."

*Bivins v. Wrap it Up Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008); *see also Procaps S.A. v. Patheon Inc.*, No. 12-24356-Civ, 2013 WL 6238647, at \*17 (S.D. Fla. Dec. 3, 2013) (reducing party's fee request with across-the-board cut based on billing inefficiencies). Although courts may apply either method, they cannot apply both. *Bivins*, 548 F.3d at 1351. Additionally, Courts need not become "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, in awarding attorney's fees, the essential goal for the Court is to "do rough justice, not to achieve auditing perfection." *Id*. The Court may also consider its own experience in determining reasonable fees. *Norman*, 836 F.2d at 1303.

By failing to file any response to Plaintiffs' Complaint [Doc. 1] or Motion for Default Judgment [Doc. 18], Defendants have not contested the availability of attorney's fees and costs, the costs incurred by Plaintiffs, or the time expended by Plaintiffs' counsel. *See Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974),[1] *overruled on other grounds by Blancher v. Bergeron*, 489 U.S. 87 (1989). "Although a district court has wide discretion in performing these calculations, the court's order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Loranger*, 10 F.3d at 781 (cleaned up).

---

[1] The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

B.   **Hourly Rates**

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citation omitted). "The party seeking attorney's fees bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates." *Loranger*, 10 F.3d at 781 (quotation marks and citation omitted). Satisfactory evidence is "more than the affidavit of the attorney performing the work." *Id.* (quotation marks and citation omitted). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Barnes*, 168 F.3d at 437 (quoting *Cullens v. Ga. Dep't. of Transp.*, 29 F.3d 1489, 1494 (11th Cir.1994)). Critically, the relevant legal community is the Macon Division of the Middle District of Georgia. *Eaton v. Astrue*, No. 5:09–CV–383 (MTT), 2011 WL 3296097, at *2 n.3 (M.D. Ga. Aug. 2, 2011).

Plaintiffs propose rates of $450.00 per hour for attorney LeeAnn Jones (a partner at the firm), $350.00 per hour Nicholas McDaniel (a ninth-year associate), and a range of $85.00 to $200.00 per hour for paralegals on this matter. [Doc. 24-2, pp. 3–4]. In determining reasonable hourly rates in the relevant legal market, the undersigned may also consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation[,] and ability, the time constraints involved, preclusion of other employment, contingency, the

undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson*, 488 F.2d at 717–19) (the "*Johnson* factors"). The Court has reviewed the relevant *Johnson* factors and the Plaintiffs' Motion for Unliquidated Damages and related documents. [Docs. 24—24-3]. Based on this review, and the Court's own judgment and experience, the Court finds these are reasonable hourly rates for these lawyers for this type of work in the Macon area.

### C.   Hours

However, after reviewing Plaintiffs' counsel's contemporaneous billing records, the Court finds the total of 78.25 hours billed to be unreasonable. [Doc. 24-2, p. 6]. As a general rule, attorneys must exercise what the Supreme Court has termed "billing judgment." *Barnes*, 168 F.3d at 428 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). That means they must exclude from fee applications "excessive, redundant, or otherwise unnecessary hours," which are hours "that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation[,] or experience of counsel." *Norman*, 836 F.2d at 1301. Importantly, "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them." *Barnes*, 168 F.3d at 428. In the end, however, "exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." *Norman*, 836 F. 2d at 1301.

First, the Court finds the bills' heavy redactions make it impossible to discern

what work was being performed or whether the time expended was reasonable. While a party may certainly instruct its lawyers to ensure that anything remotely related to attorney-client communications or internal communication about the client's matter be redacted from the submitted bills, when they do so, they make it very difficult for the reviewing court to review those entries and require its opponents to reimburse them. When a party seeks attorney's fees and expenses, that party always shoulders the burden to provide the court with the requisite information to review the request. "A court may deduct hours from the time billed if it finds that the billing entries are either unacceptably vague or so heavily redacted that it cannot discern the legal services provided." *Meyrowitz v. Brendel*, No. 16-81793-CV, 2018 WL 4440492, at *6 (S.D. Fla. Sept. 17, 2018); *see also Bujanowski v. Kocontes*, No. 808-CV-0390-T-33EAJ, 2009 WL 1564263, at *2 (M.D. Fla. Feb. 2, 2009), *report and recommendation adopted in part*, No. 808CV390T33EAJ, 2009 WL 1564244 (M.D. Fla. May 1, 2009), *aff'd*, 359 F. App'x 112 (11th Cir. 2009) (noting that a time entry may be discounted where the description of the work performed is overly vague). When a party chooses to prioritize its confidentiality over an award of fees, the Court will honor that choice. However, rarely, if ever, can a party have both.

Additionally, the Court finds several time entries to be excessive, especially when considering they covered very routine activities. For example, Plaintiffs seek approximately 39.6 hours ($12,701.50) drafting and preparing the Complaint—that is

nearly an entire standard American work week. This case involved a fairly routine breach of guaranty matter. Plaintiffs failed to explain why it took nearly a week to draft the Complaint. And without an exceptional explanation, the Court will not award that requested amount. By way of further example, Plaintiffs seek an entire hour for the rote and elementary task of drafting and reviewing the Verification of the Complaint—a single page at the end of the document—and 1.2 hours ($420.00) for "correspondence regarding finalizing and filing complaint." [Doc. 24-2, p. 12]. They also seek 7.5 hours ($1,740.00) for work related to service. Simply put, the hours spent on these routine tasks are too high to be considered reasonable.

Finally, the Court finds that block billing makes it impossible for the Court to conduct a specific review of the timeliness and reasonableness of the individual tasks contained in a single time entry. "Block billing" is the practice of including multiple distinct tasks within the same time entry. *See Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, No. 15-CV-62688, 2021 WL 1092214, at *5 (S.D. Fla. Mar. 4, 2021), *report and recommendation adopted*, No. 15-62688-CIV, 2021 WL 1089895 (S.D. Fla. Mar. 22, 2021); *see also Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F. App'x 927, 931 (11th Cir. 2013); *Maiden Specialty Ins. Co. v. Three Chefs & a Chicken, Inc.*, No. 12-22724-CIV, 2014 WL 11429052, at *10 (S.D. Fla. Jan. 28, 2014), *report and recommendation adopted*, 2014 WL 11429053 (S.D. Fla. Mar. 13, 2014) (reducing fees for block billing where court was unable to determine if the amount of time spent on each task was reasonable); *Estrada v.*

*Alexim Trading Corp.*, No. 10-23696-CIV, 2012 WL 4449470, at *11 (S.D. Fla. Sept. 26, 2012) (reducing hours for block billing, where counsel failed to separate the entries to allow the court to properly determine whether a reasonable amount of time was spent reviewing a particular filing as opposed to conferring about the filing).

In sum, Plaintiffs request $25,266.50 for attorney's fees. Rather than conducting an hour-by-hour analysis of counsel's time entries, the Court exercises its considerable discretion and concludes that an across-the-board 50% reduction to the amount of fees Plaintiffs' counsel requests is appropriate given the heavily-redacted nature of most entries, block billing, and excessive time. Therefore, the Court awards Plaintiffs $12,633.25 as reasonable attorney's fees.

### D.    Costs

Plaintiffs also seek costs under FRCP 54. The Court has reviewed Plaintiffs' requests and finds the amount of $814.50, comprising of the $402.00 filing fee and $412.50 associated with service, to be reasonable. [Doc. 24-2, p. 6]; *see also* [Doc. 25].

### E.    Pre-judgment Interest

As noted in the Court's Default Judgment Order, Plaintiffs have established that Defendants are liable to Plaintiffs for pre-judgment interest. [Doc. 19, p. 2]. The Court determines that amount now.

The underlying agreements providing for the award of pre-judgment interest do not specify a particular pre-judgment interest rate. The Court notes that it's not crystal

clear whether Georgia or Florida law applies with respect to the correct interest rate in this matter. Under Georgia law, the applicable rate is 7% per annum simple interest. *See* O.C.G.A. § 7-4-2. Under Florida law, the applicable rate at the time the debt became due (December 2022) was 4.75% per annum simple interest. *See* Fla. Stat. § 55.03.2.[2]

Given the lack of clarity as to which rate governs, as well as the fact that the underlying Lease [Doc. 1-1, § 24.17], Assignment [Doc. 1-4, p. 3], and Guaranties [Doc. 1-9, pp. 53, 56] provide for the applicable law to be the laws of the State of Florida and the underlying litigation leading to payment of the settlement sum was also in Florida, the Court finds the lower interest rate as set forth under Florida law (4.75% per annum simple interest) appropriate.

The duration of time between the date the underlying debt became owing to Plaintiffs (December 22, 2022) and the date this Court entered default judgment (April 24, 2023) is 123 days. The governing rate of 4.75% per annum equates to a daily percentage rate of .0130137%.

With respect to the liquidated damages sum of $256,000.00, 123 days of pre-

---

[2] Pre-judgment interest pursuant to this statute is awarded from the date the debt was due until the time of judgment. *See, e.g., Langsetmo v. Metza*, 335 So.3d 708, 711 (Fla. Dist. Ct. App. 2022). Here, Defendants' debt became due at the time Plaintiffs paid $256,000.00 to Landlord to settle the claims brought against them in the litigation, which was on December 22, 2022. *See, e.g.,* [Doc. 1, ¶ 20]. The applicable pre-judgment interest rate at the time of loss—here, 4.75% per annum—governs the accrual of interest until the entry of judgment, including pre-judgment interest on attorney's fees and expenses of litigation. *See, e.g., Genser v. Reef Condo Ass'n*, 100 So.3d 760, 762–63 (Fla. Dist. Ct. App. 2012); *see also* MyFloridaCFO, Accounting and Auditing, https://www.myfloridacfo.com/division/aa/local-governments/judgement-interest-rates (last visited May 25, 2023).

judgment interest at the above daily interest rate totals $4,097.75. With respect to the attorney's fees of $12,633.25, 123 days of pre-judgment interest at the daily interest rate totals $202.22. Together, Defendants owe Plaintiffs pre-judgment interest on the liquidated damages and attorney's fees in the total amount of $4,299.97.

**III. CONCLUSION**

For the reasons noted above, Plaintiffs' Motion for Unliquidated Damages [Doc. 24] is **GRANTED in part** and **DENIED in part**. The Court awards Plaintiffs $12,633.25 in attorney's fees, pre-judgment interest of $4,299.97, and costs in the amount of $814.50. Defendants are jointly and severally **ORDERED** to pay Plaintiffs $17,747.72.

**SO ORDERED**, this 25th day of May, 2023.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**